UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| K. PETROLEUM, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 14-201-DCR |
| ) | |
| V. ) | |
| ) | |
| PROPERTY TAX MAP NUMBER 7 ) | |
| PARCEL 12, KNOX COUNTY, ) | **MEMORANDUM OPINION** |
| KENTUCKY, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Plaintiff K. Petroleum, Inc.'s ("KPI") motion for summary judgment. [Record No. 61] The plaintiff has moved for judgment granting it condemnation rights against the subject property and for an adjudication that the amount of compensation owed to the defendants is $240.76. Specifically, K. Petroleum argues that under K.R.S. § 416.660(1), just compensation for a temporary easement is the fair rental value of the easement sought. In response, Defendants Jack Elliott Jr., Holly Jean Elliott, and Marilyn Louise Elliott contend that K.R.S. § 416.560(4) is the appropriate statutory reference for calculating compensation for a temporary easement. [Record No. 64] They also argue that the rental value for a one-month easement is insufficient where the gas line for which the easement is sought remains in place.

For the reasons outlined below, the plaintiff's motion will be denied.

- 1 -

## I.

KPI is engaged in the construction, maintenance, and operation of gas pipelines. [Record No. 29, ¶ 1] In September 2014, as the result of a bridge relocation project, KPI began construction of the T-632 gas transmission pipeline over property owned by Defendants Jack Elliott, Jr., Marilyn Louise Elliott, and Holly Jean Elliott, located in Knox County, Kentucky. KPI hired Mountain Ridge, LLC, to place the pipeline. [Record No. 36-3, p. 4] The plaintiff did not seek condemnation of the property prior to beginning construction because "the pipeline was intended and believed to be constructed on property adjacent" to the defendants' property. [Record No. 29, ¶ 11] A KPI representative and a state inspector on the project informed the employees of Mountain Ridge of where to place the pipeline. [Record No. 36-3, p. 17]

On September 25, 2014, Jack Elliott, Jr. discovered that construction of the pipeline had begun on the property. After he was told that a "house tap" would not be provided, he demanded that Mountain Ridge's employees leave the property and cease all construction. [*Id.*, pp. 17–18] KPI attempted -- but was unable -- to reach an agreement with the defendants to allow construction of the pipeline to continue. [Record No. 29, ¶ 15] This delay caused the project to be put on hold for approximately three weeks and for the pipe already placed on the defendants' property to remain. [Record No. 36-3, p. 7]

On October 6, 2014, the plaintiff filed this condemnation action under Kentucky Revised Statutes §§ 278.502 and 416.550 through 416.670, seeking the condemnation of perpetual and temporary rights-of-way over the defendants' property. [Record No. 1, ¶¶ 1, 15] Under Rule 71.1(c)(3) of the Federal Rules of Civil Procedure governing condemnation

actions, the plaintiff named as defendants the individuals that were known to "have or claim an interest in the property." [Record No. 1, ¶¶ 1–2] Thereafter, KPI made arrangements to construct the part of the T-632 pipeline at issue over another portion of land not owned by the defendants. [Record Nos. 29, ¶ 11; 36-3, p. 7] The new pipeline was installed and became operational on October 17, 2014. [Record No. 36-3, p. 9] The defendants filed their Answer on November 4, 2014, which included a counterclaim for trespass and punitive damages. [Record No. 10]

Subsequently, the defendants filed motions to dismiss asserting that the easement was no longer necessary and that the amount-in-controversy was not sufficient to support federal diversity jurisdiction. [Record Nos. 17, 19] On February 2, 2015, the Court denied both motions. [Record No. 26] KPI subsequently filed an Amended Complaint setting forth claims relevant to temporary rights-of-way over the property in question and removing the claim for a permanent right-of-way. [Record No. 29] The defendants' Answer, filed on February 18, 2015, again included a counterclaim for trespass and punitive damages. [Record No. 32]

The plaintiff responded by moving to dismiss the counterclaim, and the defendants moved for partial summary judgment on their counterclaim and on the plaintiff's claim for condemnation of temporary rights-of-way. [Record Nos. 36, 46] The Court dismissed the counterclaim for trespass and punitive damages and denied the defendants' motion for summary judgment regarding the temporary easement. [Record No. 54] The defendants then moved for reconsideration [Record No. 58], which the Court denied. [Record No. 63]

On July 30, 2015, KPI moved for summary judgment, seeking condemnation rights and an adjudication that the compensation owed to the defendants is $240.76. [Record No. 61] The defendants filed their objections to the motion on August 20, 2015, and KPI replied on August 24, 2015. [Record Nos. 64, 65]

## II.

KPI moves for summary judgment granting it a temporary easement for the one-month period during which it was constructing the T-632 pipeline on the defendants' property. [Record No. 61-1, p. 2] It asserts that the proper calculation of damages is the fair rental value of the easement from September 1, 2014, to September 25, 2014, when the defendants ordered KPI to cease construction and leave the property. [*Id.*] In response, the Elliotts argue that Kentucky law requires KPI to compensate them for the diminution in market value caused by the placement of the pipeline on their land. [Record No. 64-1, p. 3] They further contend that damages for a one-month easement are inappropriate because the pipeline remains in place. [*Id.*] In its reply, KPI claims that it is not responsible for the pipeline remaining on the land, as the defendants forced KPI to cease construction and vacate the premises on September 25, 2014. [Record No. 65, pp. 1–2]

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment bears the burden of showing conclusively that no genuine issue of material fact exists. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). Once the moving party has met its burden of production, the party opposing summary judgment must "'do more than simply show that there is some metaphysical doubt as to the material facts.'" *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). Instead, the nonmoving party must present "significant probative evidence" of a genuine dispute in order to defeat the motion for summary judgment. *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

Under K.R.S. § 278.502, a corporation engaged in constructing, maintaining, or operating gas pipelines in public service may condemn lands necessary for such construction, maintenance, or operation. "[W]here an entity possessing the power of eminent domain prematurely enters upon the premises of the condemnee," the measure of damages is the same as in condemnation cases. *Witbeck v. Big Rivers Rural Elec. Coop. Corp.*, 412 S.W.2d 265, 269 (Ky. Ct. App. 1965) (overruled on other grounds).

In condemnation cases involving a permanent easement, the measure of damages is the diminution in market value of the land from the time of the taking. K.R.S. § 416.660(1). Conversely, with a temporary easement, the proper measure of damages is the rental value of

the land.  *Id.*; *Com., Dep't of Highways v. Taylor Cnty. Bank*, 394 S.W.2d 581, 582 (Ky. Ct. App. 1965); *Com., Dep't of Highways v. Fister*, 373 S.W.2s 720, 723 (Ky. Ct. App. 1963). However, when the physical object for which the temporary easement is sought remains on the land, the cost of removal may be the appropriate condemnation award.  *See Clemmer v. Rowan Water, Inc.*, No. 0:04CV165HRW, 2006 WL 449266, at *5 (E.D. Ky. Feb 23, 2006).

In the present action, KPI claims that the defendants are only entitled to the fair rental value of their land from September 1 through September 25, 2014, the period during which KPI was originally constructing the T-632 pipeline on their land.  [Record No. 61-1, p. 2]  It further argues that, because the defendants have failed to identify any evidence of the rental value, the Court should look to KPI's real estate appraiser's estimate, which is $240.76.  [*Id.*] In contrast, the Elliotts assert that K.R.S. § 416.560(4) sets out the manner for calculating their damages, and that compensation for a one-month taking is legally insufficient where the pipeline remains on their land.  [Record No. 64-1, p. 3]  In response, KPI characterizes the latter request as a request for a permanent easement.  [Record No. 65, p. 1]  Additionally, KPI argues that it cannot be held responsible for its failure to retrieve the pipeline when the defendants ousted KPI from the property.  [*Id.*, p. 3]

KPI is correct in asserting that K.R.S. § 416.660(1) is the appropriate provision for calculating damages, not K.R.S. § 416.560(4).  While the defendants properly point out that the first phrase of K.R.S. § 416.660(1) refers to permanent, rather than temporary, easements, the final phrase of that provision states that landowners receive the "fair rental value of any temporary easements sought to be condemned."  *See, e.g.*, *Com., Dep't of Highways v. Taylor Cnty. Bank*, 394 S.W.2d 581, 582 (Ky. Ct. App. 1965).  Further, K.R.S. § 416.560(4)

is inapplicable, as that provision's purpose is to award damages to landowners harmed by the condemnor's entry onto their land for conducting "studies, surveys, tests, sounding, and appraisals." Thus, the fair rental value of the subject property is the appropriate compensation for KPI's temporary easement.

However, KPI has failed to carry its burden with respect to the time period for which the defendants should receive compensation. The cases it cites involve temporary easements with a definite termination point. [*See* Record No. 45, pp. 1–2.] In fact, KPI fails to refer to any case where a court has awarded only the rental value of the land when the physical object for which the temporary easement was sought remains on the land.[1] In *Com., Dep't of Highways v. Nantz*, the court stated, "[t]he amount awarded for temporary use requires more detailed analysis of the evidence. The complaint sought the temporary use of the ten-foot strip for a period of two years. From the evidence, it appears well over one year was consumed in the improvements taken." 421 S.W.2d 579, 580 (Ky. Ct. App. 1967). From this, KPI might argue that the Elliotts are only entitled to compensation for the period when KPI actually "consumed" the property by engaging in construction activities. However, the Court does not find this distinction persuasive. Because the pipeline may impact the

---

1   *Com., Dep't of Highways v. Ray*, 392 S.W.2d 665, 666, 668 (Ky. Ct. App. 1965) (awarding damages for both: (i) the nine-month temporary easement used for reconstruction of the permanent easement and for (ii) the permanent easement, a highway); *Com., Dep't of Highways v. Taylor Cnty. Bank*, 394 S.W.2d 581, 581–82 (Ky. Ct. App. 1965) (awarding damages for both: (i) the land taken and for (ii) the temporary construction easement fifteen feet in depth, lasting six to seven months); *City of Richmond v. Gentry*, 136 Ky. 319, 338–39 (1910) (holding that sewer constituted permanent easement, thus, compensation was the diminution in value of the land). [*See* Record No. 45, pp. 1–2.] *See also*, *Nantz*, 421 S.W.2d at 580 (temporary easement used for reconstruction of highway on land **taken in fee**); *Com., Dep't of Highways v. Fister*, 373 S.W.2d 720, 721 (Ky. Ct. App. 1963) (awarding damages for land taken **and** for temporary easement used for construction on that land).

utilization of the defendants' land for residential development, the fact that it remains on the land cannot be overlooked. And even if the pipeline had no effect on the land, under *Clemmer v. Rowan Water, Inc.*, the defendants would still be entitled to the fair rental value for the period of **occupancy**. No. 0:04CV165HRW, 2006 WL 449266, at *5 (E.D. Ky. Feb. 23, 2006) (concluding that condemnees should receive three-years' worth of rent for the time during which the 6-inch water line remained on their land). Therefore, the defendants are potentially entitled to the fair rental value of their property up to this date.

In its reply to the defendants' objections, the plaintiff argues that it cannot be held liable for the fact that the pipeline remains on the defendants' land, as the defendants demanded that KPI cease construction and leave the premises on September 25, 2014. [Record No. 65, p. 1] This argument fails for two reasons. First, KPI has failed to show that there is no genuine dispute over the circumstances that caused KPI to leave, meaning it is unclear whether KPI has made **any** attempt to remove the unused pipeline. At one point, KPI alleges that it was "clean[ing] up the temporary use," which the defendants described as a re-entry to "conceal an illegal trespass." [Record No. 45, p. 2, *referring to* Record No. 32, p. 3] With this statement, KPI seems to suggest that it was attempting to remove the pipeline when Defendant Jack Elliot, Jr. forced KPI to leave. However, in its Amended Complaint, KPI claimed that before it completed construction of the original pipeline, the defendants "stopped progress of the work," which suggests that KPI was still actively in the process of constructing, rather than removing, the pipeline. [Record No. 29, ¶ 10] Further, KPI did not make arrangements to construct the pipeline on other property until *after* the defendants refused access to their land. [Record Nos. 29, ¶ 12; 36-3, p. 7] It seems unlikely that KPI

would have attempted to remove the pipeline before making new arrangements, especially when it was still in the process of requesting a permanent easement on the defendants' property for continued construction. Because the Court views the evidence in the light most favorable to the nonmoving party, it concludes that KPI has failed to demonstrate that there is no genuine dispute regarding the reasons the pipeline remains on the defendants' land.[2] FED. R. CIV. P. 56(a).

Next, even if the Elliotts prevented KPI from removing the pipeline, at least one case suggests that the appropriate remedy would be the cost of removal, rather than the rental value for the period during which KPI's activities took place on the property. *Clemmer v. Rowan Water, Inc.*, involved three water lines. No. 0:04CV165HRW, 2006 WL 449266 (E.D. Ky. Feb 23, 2006). While the court in *Clemmer* ultimately dismissed the case because the recovery did not satisfy diversity jurisdiction, it came to two important conclusions in calculating the potential recovery. It reasoned that for the 8-inch water line, the plaintiffs were entitled to the fair rental value of their property for the three years that the line occupied their land ($3,000). *Id.* at 5. But for the 6-inch water line, which remained on the land, the court reasoned that the plaintiffs were entitled to the cost of its removal ($10,000). *Id.* Therefore, even if KPI is not at fault for failing to remove the pipeline, the Elliotts are not necessarily precluded from any relief other than the fair rental value of their property from

---

2    If the plaintiff could demonstrate that no genuine dispute existed regarding whether it attempted to remove the pipeline, the Court would be more apt to entertain the argument that the defendants should not receive any relief other than the rental value of the easement, as they may have waived any argument for an injunction to have the pipeline removed or for damages for the cost of removal.

September 1 to September 25, 2014. The Court cannot say that KPI is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).

### III.

While the rental value of the land at issue generally constitutes just compensation for a temporary easement, KPI has failed to demonstrate that there is no genuine issue regarding the time period the Court should use for this calculation, as the pipeline KPI constructed remains on the defendants' land. Even if KPI is not to blame for its failure to remove the pipeline, the defendants may be entitled to the cost of its removal, rather than the rental value of the land. Therefore, the Court will deny KPI's motion for summary judgment. Accordingly, it is hereby

**ORDERED** that the plaintiff's motion for summary judgment [Record No. 61] is **DENIED**.

This 22nd day of September, 2015.



Signed By:
*Danny C. Reeves* DCR
United States District Judge