UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| K. PETROLEUM, INC., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 6: 14-201-DCR |
| ) | |
| V. ) | |
| ) | |
| PROPERTY TAX MAP NUMBER 7 ) | |
| PARCEL 12, KNOX COUNTY, ) | **MEMORANDUM OPINION** |
| KENTUCKY, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

*** *** *** ***

This matter is pending for consideration of the motion to dismiss filed by Defendants Jack Elliott Jr., Holly Jean Elliott, and Marilyn Louise Elliott. [Record No. 91] The defendants assert that the Court lacks subject-matter jurisdiction because Plaintiff K. Petroleum, Inc. ("KPI") allegedly lacks the power of eminent domain under the holding in *Bluegrass Pipeline Co., LLC v. Kentuckians United to Restrain Eminent Domain, Inc.*, No. 2014-CA-517-MR, 2015 WL 2437864 (Ky. Ct. App. May 22, 2015). In response, KPI argues that *Bluegrass Pipeline* is inapposite and that KPI properly demanded temporary rights-of-way over the defendants' property under Kentucky law. [Record No. 92] For the reasons outlined below, the defendants' motion will be denied.

**I.**

As set forth in previous orders, KPI is a private company that constructs, maintains, and operates natural gas pipelines. [Record No. 29, ¶ 1] In September 2014, KPI began construction of the T-632 gas transmission pipeline on the defendants' property located in

Knox County, Kentucky. [*Id.*, ¶¶ 5–6] Because KPI incorrectly believed that it was constructing the pipeline on property over which it already had obtained rights, it did not seek condemnation of the property prior to beginning construction. [*Id.*, ¶ 11] On or about September 25, 2014, Defendant Jack Elliot, Jr. discovered the construction and demanded that KPI leave the property. [*Id.*, ¶ 15; Record No. 91-1, p. 2]

As a result, KPI filed this condemnation action against the defendants on October 6, 2014, seeking permanent and temporary rights-of-way over the subject property. [Record No. 1] The company also arranged to construct the T-632 pipeline on other property, and that pipeline became operational on October 17, 2014. [Record No. 36-3, p. 9] Because KPI ended up moving the pipeline to another location, the plaintiff amended its Complaint to seek condemnation for only temporary rights-of-way. [Record No. 29, ¶¶ 14–15] The defendants' Answer to the Amended Complaint included a counterclaim for trespass and requested an award of punitive damages. [Record No. 32]

On March 19, 2015, KPI filed a motion to dismiss the defendants' counterclaim. [Record No. 36] Conversely, the defendants filed a motion for partial summary judgment in their favor with respect to all liability issues. [Record No. 46] The Court granted KPI's motion to dismiss, concluding that reverse condemnation was the only claim available to the defendants under Kentucky law. [Record No. 54, p. 6] Further, the Court denied the defendants' motion for summary judgment, determining that KPI's request for temporary rights-of-way satisfied the "necessity" and "public service" requirements for the use of eminent domain power under Ky. Rev. Stat. § 278.502. [*Id.*, pp. 9–10] The defendants moved for reconsideration, which the Court denied. [Record Nos. 58; 63]

On July 30, 2015, KPI filed a motion for summary judgment, seeking condemnation rights and an adjudication of the compensation owed to the defendants. [Record No. 61] The Court denied that motion because KPI failed to demonstrate that there was no genuine issue regarding the time period for the temporary rights-of-way and, in any event, the defendants may be entitled to the cost of removal of the pipeline. [Record No. 67, p. 10]

The parties submitted their pretrial filings, and a final pretrial conference was held on November 20, 2015. [*See* Record Nos. 72; 74–79; 83.] Additionally, the parties' objections to certain exhibits and witnesses remain pending. [Record Nos. 80; 86]

On February 25, 2016, the defendants filed the present motion to dismiss, asserting that under the authority of *Bluegrass Pipeline*, KPI does not have the power of eminent domain because it is not regulated by Kentucky's Public Service Commission ("PSC"). [Record No. 91-1, p. 2] The defendants argue that, as a result, the Court lacks subject-matter jurisdiction. [*Id.*] In response, KPI submitted evidence that the company is regulated by the PSC. [Record No. 92-2] In their reply brief, the defendants contend that KPI merely "maintains a farm tap system, that is for private use, and private consumption," meaning that KPI cannot exercise eminent domain power for construction of the T-632 pipeline under Kentucky law. [Record No. 95, p. 2]

## II.

### A.   Standard of Review

A party may move for dismissal based on lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure at any time. *See* Fed. R. Civ. P. 12(h)(3). Rule 12(b)(1) motions to dismiss may constitute facial or factual attacks. *See*

*Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). A facial attack "questions merely the sufficiency of the pleading." *Id.* On the other hand, a factual attack requires the Court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Id.*

The Court "engages in a factual inquiry regarding the complaint's allegations only when the facts necessary to sustain jurisdiction do not implicate the merits of the plaintiff's claim." *Id.* If "the attack on subject-matter jurisdiction also implicates an element of the cause of action," the Court should "deal with the objection as a direct attack on the merits of the plaintiff's claim." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). In other words, the Court should treat the challenge as a motion under either Rule 12(b)(6) or Rule 56. *Id.*; *see also Global Technology, Inc. v. Yubei (XinXiang) Power Steering System Co., Ltd.*, 807 F.3d 806, 810 (6th Cir. 2015) ("This approach is identical to the approach used by the district court when reviewing a motion invoking Federal Rule of Civil Procedure 12(b)(6)."). But the burden remains on the party asserting federal jurisdiction, rather than the movant. *See Global Technology*, 807 F.3d at 810.

Here, the defendants present a factual attack on the Court's subject-matter jurisdiction to entertain this case.[1] [*See* Record No. 91-1, p. 5.] They argue that KPI lacks the power of eminent domain because it is not regulated by the Public Service Commission and because the T-632 pipeline does not fulfill the "public use" and "public service" requirements of Ky.

---

[1] District courts have original jurisdiction of civil actions between citizens of different states with an amount in controversy exceeding $75,000.00, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). The plaintiff brought the present action in federal court because the parties are of diverse citizenship and KPI stood to lose in excess of $75,000.00 if it had been unable to construct the T-632 pipeline. [Record No. 29, ¶¶ 1, 2, 8]

Rev. Stat. §§ 416.675(1) and 278.502. [Record No. 95, p. 2] These challenges require the Court to consider the conflicting evidence of the parties, such as the regulatory documents attached to the parties' briefs. [Record Nos. 91-4; 91-5; 92-2] Further, this factual attack implicates an element of KPI's cause of action—whether KPI can claim temporary rights-of-way over the defendants' property. Consequently, the Court will address the defendants' motion to dismiss as an attack on the merits of KPI's assertion of temporary condemnation rights over the subject property. *See Gentek Bldg. Products*, 491 F.3d at 330. In addition, the Court will "weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." *See Global Technology*, 807 F.3d at 810.

### B. Kentucky's Power of Eminent Domain

According to Ky. Rev. Stat. § 278.502:

> Any corporation or partnership organized for the purpose of, and any individual engaged in or proposing to engage in, constructing, maintaining, or operating oil or gas wells or pipelines for transporting or delivering oil or gas, including oil and gas products, in public service may, . . . condemn the lands . . . ."

Ky. Rev. Stat. § 278.502. Every exercise of the power of eminent domain must be based on "public use" of the condemned property. Ky. Rev. Stat. § 416.675(1). "Public use" includes ownership or occupation by the Commonwealth or its entities, the acquisition and transfer of properties for eliminating slum areas, the use of the property for the creation or operation of public utilities or common carriers, and other uses expressly authorized by statute. Ky. Rev. Stat. § 416.675(2). In addition, "no property may be condemned primarily for the purpose of facilitating an incidental private use" or for merely indirectly benefiting the general public. Ky. Rev. Stat. § 416.675(3).

Under Ky. Rev. Stat. § 278.470, "[e]very company receiving, transporting or delivering a supply of oil or natural gas for public consumption is declared to be a common carrier, and the receipt, transportation and delivery of natural gas into, through and from a pipeline operated by any such company is declared to be a public use." However, *Bluegrass Pipeline* held that only pipeline companies "regulated by the PSC" may exercise Kentucky's power of eminent domain. 2015 WL 2437864, at *4. That case involved a limited liability company proposing the construction of a pipeline in Kentucky for transporting natural gas liquids from Pennsylvania, West Virginia, and Ohio to the Gulf of Mexico. *Id.* at *1.

Here, the parties' dispute involves whether KPI's delivery of natural gas through the T-632 pipeline constitutes both a "public use" and a "public service." Ky. Rev. Stat. §§ 416.675(1), 278.502. Because the delivery and transportation of natural gas through a pipeline by a common carrier is considered a "public use," the ultimate question is whether KPI is a "common carrier" under Ky. Rev. Stat. § 278.470.

The defendants accept that KPI transports and delivers natural gas; however, they seem to dispute whether the company does so for "public consumption." *See* Ky. Rev. Stat. § 278.470. [Record No. 95, p. 2] Public consumption means "ultimate use by Kentucky consumers." *In re Langford*, 32 B.R. 746, 748 (W.D. Ky. 1982) (holding that small producer was not common carrier because it sold gas only to an *interstate* pipeline company). The defendants concede that KPI furnishes natural gas to at least *some* Kentucky consumers (i.e., those living within one-half mile of the producing well or gas gathering pipeline). [Record No. 95, p. 4] Further, KPI gathers gas in Knox County to sell to Delta Natural Gas Transmission System, which then distributes the gas to Kentucky consumers. [*Id.*, p. 2;

Record Nos. 92-2, p. 7; 91-4] Consequently, KPI is a common carrier,[2] and its transportation of natural gas through the T-632 pipeline constitutes a public use. *See In re Langford*, 32 B.R. at 748. However, the defendants argue that KPI does not service the "public at-large." [Record No. 95, p. 2] Two cases shed light on the issues raised by the defendants.

In *Milam v. Viking Energy Holdings, LLC*, a limited liability company brought condemnation proceedings against the Milams to construct a pipeline for transporting natural gas from Richardsville to Bowling Green, Kentucky. 370 S.W.3d 530, 531 (Ky. Ct. App. 2012). The lower court determined that, despite the fact that the company conveyed natural gas to other private companies, the company was a common carrier. *Id.* at 533–34. Thus, the lower court concluded that the company easily met the "public use" requirement of Ky. Rev. Stat. § 416.675(1). *See id.*

The lower court also determined that the company met the "public service" requirement of Ky. Rev. Stat. § 278.502, reasoning that: (i) the company held governmental and regulatory licenses to transmit natural gas from Richardsville to Bowling Green; (ii) the company was regulated by the PSC; and (iii) the company was subject to public service company taxes. *Milam*, 370 S.W.3d at 533–34. On appeal, the Milams argued that the company's particular pipeline at issue did not meet the public service requirement because it was a "gathering line," conveying natural gas to other private companies, rather than directly to the public. *Id.* at 534. The Kentucky Court of Appeals concluded that "gathering" lines

---

[2] In fact, the defendants have never actually challenged KPI's status as a common carrier. [*See* Record No. 54, p. 9.]

could satisfy the public service requirement, affirming the lower court's reasoning. *Id.* at 535.

Similar to the company in *Milam*, KPI has authorization for "exploring, producing and gathering" natural gas in Whitley, Knox, and Clay Counties "for sale to various users via the Delta Natural Gas Transmission System." *See id.* at 533. [Record No. 92-2, p. 7] Further, the PSC establishes the rates KPI may charge to the Kentucky customers for it services. *See id.* [*Id.*, p. 4] Additionally, KPI's farm tap system is "constructed according to all applicable rules and regulations of the Public Service Commission." [*Id.*, p. 8] Although the parties have not presented any evidence regarding whether KPI pays public service taxes, the services provided by KPI closely resemble the services provided by the company in *Milam*, indicating that KPI meets both the "public use" and "public service" requirements of Ky. Rev. Stat. §§ 416.675(1) and 278.502, respectively. *See Milam*, 370 S.W.3d at 533, 535.

Here, the defendants seem to assert the same argument presented in *Milam*—that gathering lines cannot satisfy the public service requirement because they primarily convey natural gas to private organizations. *See In the Matter of K-Petroleum, Inc.*, Case No. 2002-00302, *1–2 (PSC Oct. 29, 2002) (describing KPI as a "gathering facility and transmission facility" that is "subject to Public Service Commission (Commission) jurisdiction and regulation"). [Record No. 95, p. 2] That argument is foreclosed. *See Milam*, 370 S.W.3d at 535.

Likewise, in *EQT Gathering, LLC v. A Tract of Property Situated in Knott County, Kentucky*, this Court stated that regulated pipelines "need not be fully open to the public to be a public use." 970 F. Supp. 2d 655, 663 (E.D. Ky. 2013). The case involved a company

that constructed, maintained, and operated natural gas pipelines, permitting other natural gas companies to use the pipeline at issue. *Id.* The Court determined that the company's pipeline was "available for public use by the portion of the public relevant here—natural gas transportation companies." *Id.* Moreover, the Court determined that the public use and public service requirements were one and the same, at least with respect to common carriers. *See id.* at 662 (citing *Milam*, 370 S.W.3d at 533−35).

KPI resembles the company in *EQT Gathering* in that it conveys natural gas to Delta Natural Gas Company, Inc., which is listed on the PSC's "Natural Gas Distribution Service Areas" map, attached to the defendants' motion to dismiss. *See EQT Gathering*, 970 F. Supp. 2d at 663. [Record Nos. 92-2, p. 7; 91-4] Thus, KPI serves the relevant portion of the Kentucky public—a natural gas transportation company. *See id.* at 663. Further, the defendants' contention that KPI's pipeline does not meet the public service requirement of Ky. Rev. Stat. § 278.502 because it is "NOT a transmission line" is unavailing. *See id.* at 662. [Record No. 95, p. 2]

The defendants' arguments regarding *Bluegrass Pipeline* are also unpersuasive. [Record No. 95, p. 2] Again, KPI has demonstrated that it is regulated by the PSC, as required by *Bluegrass Pipeline*. 2015 WL 2437864, at *4. [Record No. 92-2] In addition, KPI's T-632 pipeline actually serves Kentucky customers, so it is distinguishable from the pipeline in *Bluegrass Pipeline*, which transported natural gas to the Gulf of Mexico. *Id.* at *1. [Record No. 92-1, p. 24]

The defendants present two other documents to challenge KPI's assertion of eminent domain authority. They contend that, because the PSC's "Annual Report Statistics" for 2013

and 2014 do not identify KPI, then KPI "does not provide natural gas to Kentucky Consumers." [Record No. 95, p. 3]  However, the Annual Report Statistics only list "Gas Distribution Companies" [*see* Record No. 91-5], and KPI is a "gathering facility." *See In the Matter of K-Petroleum, Inc.*, Case No. 2002-00302, \*1 (PSC Oct. 29, 2002).  *Milam* held that a gathering line can satisfy the public service requirement in Ky. Rev. Stat. § 278.502, so KPI need not be a "gas distribution company" for its pipeline to meet the public service requirement.[3]  370 S.W.3d at 535.

### III.

KPI has demonstrated its ability to exercise eminent domain authority under Kentucky law because it is regulated by the Public Service Commission and conveys natural gas to Kentucky consumers.  As a result, the defendants' motion to dismiss fails under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, it is hereby

**ORDERED** that the defendants' motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure [Record No. 91] is **DENIED**.

This 10th day of March, 2016.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge

---

[3]  The fact that KPI does not report the production of natural gas to the PSC, as required by 805 Ky. Admin. Regs. 1:180 (2007), merely indicates that KPI is not an "oil or gas operator" under that regulation.  The defendants do not explain how that regulation relates to whether KPI is a common carrier under Ky. Rev. Stat. § 278.470 or whether KPI otherwise meets the requirements of Ky. Rev. Stat. §§ 416.675(1) and 278.502.  [Record No. 95, p. 3]